833 So.2d 1136 (2002)
Marcus D. ROBERT and Mary Ann Sharp, Plaintiffs-Appellees,
v.
Claude R. NELSON, Yellow Checker Cab Co. of Shreveport and Bossier City, Inc. and North American Fire & Casualty Insurance Company, Defendants-Appellants.
No. 36,541-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
James Paul Doherty, Jr., Opelousas, for Appellants.
*1137 David C. Turansky, Shreveport, for Appellees.
Before BROWN, CARAWAY and HARRISON (Pro Tempore), JJ.
CARAWAY, J.
The automobile accident in this case occurred when the defendant changed lanes of travel and was struck in the rear of his vehicle by the plaintiff's vehicle. The defendant was held solely at fault and now contests the trial court's finding. Alternatively, the defendant argues that if he was negligent, he was only partially negligent and a portion of the fault should have been assigned to the plaintiff. For the following reasons, we affirm the trial court's ruling.

Facts
On the evening of November 5, 2000, the plaintiff, Marcus D. Robert, was traveling northward on Jewella Avenue, a four-lane street located in the City of Shreveport, in a car owned by his grandmother, Mary Ann Sharp. Robert was an employee of Pizza Hut and was in the process of making a delivery. He was in the left north-bound lane and was driving at a speed of approximately 40 miles per hour.[1] As he entered the intersection of Jewella and Jackson Street, a taxi-cab, owned by Yellow Checker Cab Company of Shreveport and Bossier City, Inc. ("Yellow Checker") and driven by Claude Nelson ("Nelson"), changed lanes from the right northbound lane to the left northbound lane and directly into the path of Robert.
Nelson did not use his turn signal and, according to the testimony of a pedestrian witness, was approximately one car length ahead of Robert when he abruptly changed lanes. The streets were wet because it had just rained and that portion of Jewella was on a downhill slope. As a result, Robert collided with the taxi, causing damage to the rear of the taxi and the front of Sharp's car. The damage to the taxi was greatest on the left rear side of the vehicle.
Robert and Sharp instituted the present suit against Nelson, Yellow Checker, and its insurer, American Fire And Casualty Insurance Company, for damages arising from Robert's personal injuries and the property damage to Sharp's car. There was only one independent witness to the accident, the pedestrian, Christopher Stewart, who testified at trial. Stewart was waiting to cross Jewella Avenue when the accident occurred.
Nelson was never served with process and did not appear at trial. After Nelson's statements to a police officer and insurance adjuster were allowed into evidence, the trial court held the record open in order to obtain Nelson's testimony, but the parties were not able to locate Nelson. The trial court gave extensive reasons for judgment, found Nelson to be totally at fault, and awarded Robert $4,500 in general damages, $1,119.87 in medical expenses, and $529.20 in lost wages. The trial court further awarded Sharp $1,259.16 in damages for the loss of her car. The defendants appeal, claiming that Robert should be assessed fault for the accident.

Discussion
A reviewing court cannot disturb the factual findings of a trial court absent abuse of discretion or manifest error. Powell v. Regional Transit Authority, 96-0715 (La.6/18/97), 695 So.2d 1326; Rosell v. ESCO, 549 So.2d 840 (La.1989); State v. Baxter, 33,188 (La.App.2d Cir.5/10/00), 759 So.2d 1079. To reverse the trial court's factual findings, the appellate court must find from the record that no reasonable *1138 factual basis exists for the findings and must determine that the record establishes the findings as clearly wrong or manifestly erroneous. Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993). Additionally, the allocation of fault is a factual determination and subject to the trial court's great discretion. Hughes v. Bossier Parish School Board, 32,225 (La. App.2d Cir.10/29/99), 745 So.2d 816.
The defendants argue that a following motorist is charged with a duty of great care in regards to a preceding motorist. Louisiana Farm Bureau Mut. Ins. Co. v. Regal Ins. Co., (La.App. 3d Cir.3/6/02), 809 So.2d 1280, citing Nesbit v. Travelers Ins. Co., 218 So.2d 396 (La.App. 2d Cir.1969). This duty is derived in large part from La. R.S. 32:81(A), which states:
The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.
That statute has been interpreted as requiring a following driver to maintain a sufficient distance from a preceding vehicle to avoid a collision under conditions that should be reasonably anticipated; and, if there is a collision, there is a rebuttable presumption that the following motorist has breached the standard of conduct prescribed by La. R.S. 32:81(A). Daigle v. Mumphrey, 96-1891 (La.App. 4th Cir.3/12/97), 691 So.2d 260. Nevertheless, as noted in Raymond Through Raymond v. Deaton, 423 So.2d 724, 728 (La. App. 1st Cir.1982), this rule and presumption was intended to cover the situation where the vehicle has been lawfully proceeding within the same lane as the following vehicle and a rear-end collision occurs as a result of the following motorist's failure to maintain a safe distance or to keep a proper lookout.
Because of Nelson's change of travel lanes, other statutes have application. La. R.S. 32:79 prescribes the following duty:
Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply.
(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

* * *
Additionally, La. R.S. 32:104 provides that a change of lanes by the driver must be indicated by a turn signal and made with reasonable safety. Thus, the applicable rule from these two statutes is "a motorist who attempts to change traffic lanes on a multiple-lane highway must ascertain before turning that the maneuver can be made safely without endangering normal overtaking or oncoming traffic." Barnett v. Guillot, 294 So.2d 907, 909 (La.App. 2d Cir.1974); Raymond, supra.
We recognize that with different circumstances, under this state's comparative fault regime, both drivers' negligent actions in violation of the above statutory provisions can combine to cause this kind of accident. Nevertheless, in this case, the trial court accepted the testimony of the pedestrian witness and Robert which clearly indicated that Robert was not given enough time to react to Nelson's abrupt change of lanes into the path of his vehicle. The trial court also noted that the damage to Nelson's vehicle indicated that he had not fully made it into Robert's lane of traffic, further indicating that Robert did not have time to avoid the accident. Likewise, the defense emphasis on the second-hand reports of the accident by the *1139 police officer and insurance adjuster is misplaced. The trial court, who obviously would have preferred to hear Nelson's first-hand account, was presented with two conflicting accounts of the accident and could accept the reasonable version of the occurrence presented by Robert and Stewart. Finally, the trial court was not manifestly erroneous in placing no fault for the accident upon Robert because of the highway conditions surrounding the accident. Robert's speed in relation to the wet roadway and nighttime conditions was not clearly shown to have been unreasonable and a contributing cause of the accident.
In conclusion, Nelson was under a legal duty to keep his vehicle in his lane of travel until he was able to ascertain that it was safe for him to move into the left northbound lane. We conclude, therefore, that he breached that duty and the trial court was not manifestly erroneous in concluding that Nelson was completely at fault.
Costs are to be assessed against the defendants.
AFFIRMED.
NOTES
[1] The record does not indicate the posted speed limit for Jewella Avenue. However, a police officer testified that Mr. Robert's speed was approximately equal to the posted speed limit.