949 So.2d 549 (2007)
Donald ROBINSON and Robert Johnson, Jr., Plaintiffs/Appellees
v.
Michael T. FLOWERS, Jr. and Farm Bureau Insurance Company, Defendants/Appellants
Allstate Insurance Co., Plaintiff/Appellee
v.
Michael T. Flowers, et al., Defendants/Appellants
Michael Frith, Plaintiff/Appellee
v.
Donald Robinson and Allstate Insurance Company, Defendants/Appellees.
Nos. 41,798-CA, 41,799-CA, 41,800-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 2007.
*551 Cotton, Bolton, Hoychick & Doughty, LLP, by John B. Hoychick, Rayville, for Appellants.
Hudson, Potts & Bernstein, by Mark J. Neal, Donald H. Zeigler, III, Monroe, for Appellees, Allstate, Insurance Co., Donald Robinson and Robert Johnson, Jr.
Bobby R. Manning, Francis C. Broussard, West Monroe, for Michael Frith.
Before CARAWAY, DREW & SEXTON (Pro Tempore), JJ.
SEXTON, J.
This appeal arises from a car accident between Donald Robinson and Michael Flowers, Jr. The accident produced three separate suits which were consolidated by the trial court into a single proceeding. After a bench trial, the trial court resolved all three suits in a single judgment. The trial court ruled in favor of Appellees finding Mr. Flowers 100 percent at fault for the accident. For the reasons stated herein, we reverse the trial court and render judgment.

FACTS
Although the exact facts are in dispute, the accident occurred on September 5, 2004, on Highway 165 in Monroe near a Skatetown facility. Mr. Robinson was driving his car to the Skatetown facility to pick up a relative at closing time that evening, when his vehicle was struck by the car driven by Michael Flowers. Mr. Flowers was driving a car owned by Elizabeth Martin, his girlfriend. Ms. Martin was a passenger in the car. The impact was between the driver's side rear corner of Mr. Robinson's car and the passenger side front corner of the car driven by Mr. Flowers.
The parties provide two vastly different accounts of the accident. Mr. Robinson claims that he was in the right hand lane of travel on the highway, searching for a parking spot on the shoulder when Mr. Flowers struck him. Mr. Flowers, in contrast, claims that, as he was driving in the right hand lane of travel, Mr. Robinson was driving on the shoulder when he swung wide into Mr. Flowers' path of travel as if to make a right hand turn into the Skatetown parking lot.
Three separate law suits were filed as a result of the accident. Mr. Robinson and his passenger, Robert Johnson, Jr., filed suit against Mr. Flowers and Farm Bureau Insurance Company, the insurer of the car driven by Mr. Flowers. The insurance company of Mr. Robinson's car, Allstate Insurance Company ("Allstate"), *552 sued Louisiana Farm Bureau Insurance Company[1] ("Farm Bureau"), as insurer of Ms. Martin's car, for property damage to Mr. Robinson's vehicle. Ms. Martin and her insurer filed a reconventional demand in that suit for damages paid as a result of the accident. In a third suit, Michael Frith, a passenger in the car driven by Mr. Flowers, sued Mr. Robinson for personal injuries.
As previously stated, the trial court consolidated all three suits into a single proceeding before the bench. All three suits were disposed of in a single judgment. In its oral reasons for judgment, the trial court found that the accident was a rear-end collision and, accordingly, applied the presumption that the following driver was negligent. The trial court found that Mr. Flowers was 100 percent at fault, stating:
. . . what is clear to this court, that there was a rear ac [sic] . . rear-end collision. There's disputes as to whether it occurred in the right lane or on the shoulder. . . . the court finds that there was a rear-end collision. Once that rear-end, . . . collision occurred, . . . the law follows provides at that point that, that following motorist must exonerate himself. . . .
Thus, the trial court did not resolve the conflicting versions of the accident, but simply concluded that since there was a rear-end accident, and the following motorist did not exonerate himself, the following motorist bore all of the fault.
The court awarded Donald Robinson $4,800 in general damages and $4,700 in special damages, and awarded Robert Johnson, Jr. $4,700 in general damages and $2,672 in special damages. In addition, it awarded Allstate $4,025.74 for proceeds it paid as a result of the accident. All awards were assessed against Mr. Flowers and Farm Bureau, jointly and in solido, with judicial interest and court costs. The trial court denied Michael Frith's claim. Mr. Frith does not appeal the denial of his claim. Mr. Flowers and Farm Bureau appeal the judgment against them.

DISCUSSION
Both parties advance a version of events that result in a rear impact, but place liability on the opposing party. Mr. Flowers insists that Mr. Robinson was driving on the shoulder when he swung wide as if to make a right hand turn. In doing so, his turn brought him into the path of Mr. Flowers and Mr. Flowers had no time to react and avoid the accident. As a result, Mr. Flowers struck Mr. Robinson on the left side rear end. In contrast, Mr. Robinson contends that he was driving in the right hand lane when Mr. Flowers came upon him from the rear. In his version, Mr. Flowers swerved to the left at the last moment resulting in striking Mr. Robinson on the left side rear end.
After finding that a rear-end collision occurred, the trial court acknowledged that a dispute existed as to whether the accident occurred on the shoulder or in the right lane of travel. Instead of deciding that dispute, the trial court applied the presumption that, in a rear-end collision, the following driver must then exonerate himself and found that Mr. Flowers failed to do so. In so applying that presumption, we find that the trial court committed legal error.
Normally, when faced with a factual dispute on appeal, an appellate court cannot disturb the fact findings of the trial court *553 unless it was manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). When a trial court commits legal error, the appellate court is required to review the record de novo. A legal error occurs when a trial court applies incorrect principles of law and those errors are prejudicial such that they materially affect the outcome and deprive a party of substantial rights. Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731.
A well-established presumption exists that, in a rear-end collision, the following driver breached the standard of care set out in La. R.S. 32:81 and is, thus, presumed negligent. Mart v. Hill, 505 So.2d 1120 (La.1987). La. R.S. 32:81 states, in relevant part, that
[T]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.
In a rear-end collision, therefore, the following motorist is presumed negligent unless he proves lack of fault. Taylor v. Voigtlander, 36,670 (La.App. 2d Cir.12/11/02), 833 So.2d 1204. When this presumption applies, to escape liability, the following motorist has the burden to prove that he had his vehicle under control, closely observed the lead vehicle and followed at a safe distance or that the lead vehicle negligently created a hazard which the following vehicle could not reasonably avoid. Id.
Louisiana's jurisprudence, however, recognizes several situations where, while the following car may have impacted the lead car from the rear, the following car is not presumed negligent. For example, a driver changing lanes without first determining that the move can be completed safely and then is struck from the rear by a following car, cannot rely on the rear-end collision presumption to shift the burden to the following driver. Daigle v. Mumphrey, 96-1891 (La.App. 4th Cir.3/12/97), 691 So.2d 260; Anthony v. State Farm Mutual Ins. Co., 227 So.2d 180 (La.App. 2d Cir.1969). In addition, a driver entering a highway from a private drive or from the shoulder has the primary duty to avoid a collision, even if a rear-end collision results. Loveday v. Travelers Ins. Co., 585 So.2d 597 (La.App. 3d Cir. 1991), writ denied, 590 So.2d 65 (La.1991).
Under such jurisprudence, if the accident was as Mr. Flowers submits, then the trial court erroneously shifted the burden to Mr. Flowers based on a misapplication of the rear-end collision presumption. Therefore, the trial court's mechanical application of that presumption without making factual findings as to how the accident occurred is an incorrect application of legal principle and is, therefore, legal error. In this case, the trial court failed to make any factual findings, save one, based on its misapplication of the rear-end collision presumption. Where legal error interdicts the fact-finding process, the manifest error standard no longer applies; and, if the record is complete, an appellate court should make its own de novo review of the record. Evans, supra. We, therefore, undertake a de novo review of the record to determine the facts as established by a preponderance of the evidence.
From our de novo review of the record, we find Mr. Flowers' version of the accident to be more credible than Mr. Robinson's version. The preponderance of the evidence supports that Mr. Robinson was driving on the shoulder as if to turn into the Skatetown parking lot and that he swung wide into Mr. Flowers' lane of travel. We are particularly persuaded by the *554 testimony of Officer Dustin Howell of the Monroe Police Department. Officer Howell was the investigating officer, arriving at the accident four minutes after the accident was called into the dispatcher at 11:13 p.m. He testified that it was common practice in the area for drivers to pull over on the shoulder to turn into Skatetown. He confirmed that Mr. Flowers related to him the same description of events that he argued at trial, that is, that Mr. Robinson was on the shoulder and swung wide into the driving lane. Officer Howell further testified that Mr. Robinson admitted to him at the scene that he had been driving on the shoulder to turn into Skatetown at the moment of impact. At trial, however, Mr. Robinson related a different version of events. Further, Officer Howell found debris on the shoulder and none in the center of the road, substantiating that the impact occurred on the shoulder.
Additional testimony offered by Mr. Flowers corroborate that of Officer Howell. Mr. Flowers, Mr. Frith and Ms. Martin all testified that their car was driving in the right lane when they came upon Mr. Robinson driving on the shoulder. They also are all consistent in their testimony that Mr. Robinson swung into the right lane directly in front of Mr. Flowers. Both Mr. Flowers and Mr. Frith testified that Mr. Robinson swung into the right lane so close to Mr. Flowers that he did not have enough time to take evasive action or avoid the accident. Mr. Flowers testified that there had been cars in the left lane, though he was not certain there were any cars there at the exact moment of impact; and, for that reason, he stayed in the right lane instead of moving into the left lane.
We adopt, therefore, Mr. Flowers' version of the facts that Mr. Robinson was driving on the shoulder when he swung into Mr. Flowers' lane. Accordingly, we find that Mr. Robinson's action contributed to the accident; and, he, therefore, must share in the allocation of fault. In a similar case, a court held that an eighteen-wheeler entering the highway from a shoulder was negligent when he was struck from the rear. Loveday, supra. The court analogized entering the highway from the shoulder to entering from a private drive with the duty to yield the right of way to highway traffic.
The Loveday court, however, also held that the following car was also negligent for failing to timely observe the eighteen-wheeler and take evasive action. Mr. Flowers also failed to keep a proper lookout. He testified that he was looking at the activity over at Skatetown and looked back at the road just as Mr. Robinson swung into the right lane. Likewise, Mr. Flowers failed to anticipate that Mr. Robinson would intrude into his path in making a right hand turn. Mr. Flowers had already observed Mr. Robinson engaged in one aberrant act, driving on the shoulder, and he should have reasonably anticipated that Mr. Robinson might do another aberrant act. Mr. Flowers is, therefore, also negligent and must share in the allocation of fault for this accident.
In allocating fault between the parties, this court is guided by the Watson factors:
. . . the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct results from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, *555 whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff and considerations in determining the relative fault of the parties.
Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985).
The supreme court has analogized the allocation of fault after an appellate court "clearly wrong" determination to the quantum area requiring that an appellate court give deference to the trial court and limit its reallocation of fault to lowering or raising the percentage of fault to the highest or lowest point respectively which is reasonably within the trial court's discretion. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607. This requirement has an important limitation.
[A] de novo review, without any deference to the fact finder, is only appropriate when there is legal error implicit in the factfinding process or when a mistake of law forecloses the fact-finding process, such as when the fact finder's decision has been tainted by an improper and prejudicial jury instruction or erroneously admitted prejudicial evidence.
Id., (Lemmon, J., concurring.) Thus, when a legal error undermines the trier of fact's allocation process, the reviewing court is free to reallocate fault without deference to the trial court and without the limitation imposed by Clement.
The scope of this exception has been subject to some discussion by Judge Caraway of this court. In his concurrence in Chisholm v. Clarendon National Ins. Co., 37,022 (La.App. 2d Cir.7/9/03), 850 So.2d 1070, writ denied, 03-2608 (La.1/9/04), 862 So.2d 983, Judge Caraway recognized the deference entitled to the trier of fact under Clement, but stated, "Nevertheless, when a fact finder incorrectly finds no fault on one party and conducts no analysis under Watson, such legal error skews the process altogether, requiring de novo review," citing Lasha v. Olin Corp., 625 So.2d 1002 (La.1993)(for the proposition that incorrectly finding one party without fault is legal error). After that opinion, Judge Caraway acknowledged that the view that no deference is owed to the trial court in cases of legal error where no fault was found had been tacitly overruled by the supreme court in Toston v. Pardon, 03-1747 (La.4/23/04), 874 So.2d 791. McElroy v. Wilhite, 39,393 (La.App. 2d Cir.5/18/05), 903 So.2d 627(Caraway, J., concurring), 903 So.2d 627.
Indeed, in Toston, the supreme court held that the trial court committed error in finding one party free from any liability, but still applied the Clement standard to its reallocation of fault. Both Toston and McElroy concerned whether or not the trial court erred in failing to allocate fault to one of the parties and involved an intensive factual review by the reviewing courts.
However, we distinguish the case sub judice from Toston and McElroy and hold that Clement does not apply. In the case sub judice, the trial court made virtually no fact findings. Its allocation of 100 percent of the fault to Mr. Robinson was based on the misapplication of the rear-end collision presumption and not on its factual view of the case. This is the kind of legal error that clearly forecloses the fact-finding process and warrants de novo review.
Accordingly, under our de novo review of the complete record, we allocate 30 percent of the fault to Mr. Flowers and 70 *556 percent to Mr. Robinson after considering the Watson factors. As we are a pure comparative fault system, we reduce Mr. Robinson's and Mr. Johnson's awards by 70 percent. Further, we reduce Allstate's award by 70 percent.
In light of our above findings, we further conclude that the trial court improperly denied the reconventional claim by Farm Bureau for proceeds paid to Ms. Martin for property damage to her car, along with a claim by Ms. Martin for her $500 deductible. Farm Bureau submitted paid checks to Ms. Martin for the property damage and to Mr. Flowers and Mr. Frith for accident-related medical bills totaling $8,912.23. We, therefore, award Farm Bureau 70 percent of that amount and award Ms. Martin 70 percent of her $500 deductible.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is reversed. We allocate 70 percent of the fault to Donald Robinson and 30 percent of the fault to Michael Flowers. We award Donald Robinson $1,440 in general damages and $1,410 in special damages against Michael Flowers and Farm Bureau Insurance Company, jointly and in solido, with judicial interest from date of judicial demand. We award Robert Johnson, Jr. $1,410 in general damages and $801.60 in special damages against Michael Flowers and Louisiana Farm Bureau Insurance Company, jointly and in solido, with judicial interest from date of judicial demand. We render judgment against Donald Robinson and Allstate Insurance Company, in solido, in favor of Louisiana Farm Bureau Insurance Company for the amount of $6,238.56, and in favor of Elizabeth Martin for the amount of $350, together with judicial interest from date of judicial demand.
Costs herein are assessed 30 percent to Appellees and 70 percent to Appellants.
REVERSED AND RENDERED.
NOTES
[1] Ms. Martin's insurer is named differently in the two suits, but the same entity is a defendant in both suits. Louisiana Farm Bureau Casualty Insurance Company appears to be the correct name as it is the name used by the company in filing its brief for this appeal.