957 So.2d 323 (2007)
Alfreda EASTER, et al., Plaintiffs-Appellees
v.
DIRECT INSURANCE COMPANY, et al., Defendants-Appellants.
Shirley Brown, Plaintiff-Appellant
v.
ACE American Insurance Kenneth Gaines and Flowers Bakers, Defendants-Appellees.
Nos. 42,178-CA, 42,179-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2007.
*324 Hudson, Potts & Bernstein, by Jay P. Adams, Monroe, for Appellant, Direct Insurance Company.
Smith & John, by Richard M. John, Shreveport, for Appellant, Shirley Brown.
Norman Gordon & Associates, by W. Brett Cain, Shreveport, for Appellees, Alfreda Easter, et al.
Lunn, Irion, Salley, Carlisle, by James B. Gardner, Shreveport, for Appellees, Kenneth Gaines, Flowers Baking of Tyler, L.L.C. and Ace American Insurance Company.
Before WILLIAMS, GASKINS and DREW, JJ.
GASKINS, J.
In this auto accident case, plaintiff Shirley Brown appeals from a judgment dismissing her lawsuit against Flowers *325 Bakery, et al. For the following reasons, we affirm the trial court judgment.

FACTS
These consolidated lawsuits arose after an August 23, 2004, car accident on north-bound Interstate 49 in Shreveport, just south of the Interstate 20 interchange. A Honda Accord driven by Ms. Brown was struck from behind by a bread truck driven by Kenneth Gaines. Alleging that she was injured, Ms. Brown sued Mr. Gaines, his employer, Flowers Bakery (Flowers), and its insurer, Ace American Insurance Company (Ace). Ms. Brown's passengers, Alfreda Easter, Golda Easter, and Golda's minor child, Kerivien Patterson, also alleged that they were injured. The passengers sued Mr. Gaines, Flowers and Ace, and also sued Ms. Brown and her insurer, Direct Insurance Company (Direct).[1] Ms. Brown's passengers later settled their claims against all parties. Ms. Brown went to trial alone against Mr. Gaines, Flowers and Ace.
Drawings of the location of the crash were introduced into evidence. These exhibits show that Interstate 49 is four lanes wide just before it splits into five lanes, three going left into the downtown area and two veering to the right toward the I-20 ramps, east and west bound.
Ms. Brown, who was from Arkansas and admitted that she was not familiar with the I-49 / I-20 interchange, said that she first thought that she needed to be in the left-hand lane of I-49 to exit to I-20 westbound. She testified:
I had just left King's Highway entering I-49 north. I was going to enter the I-20 towards Dallas area. I was going to exit off on Jewella, but as I was coming I entered to the  next to the last lane on the lefthand side of the driver's side. I was driving that area when a passenger told me that I need to get over one lane. So I turned my signal light on [and] proceeded to get over to the next lane and I saw that the traffic was pretty close. It was a car turning. They had their signal light on right to move over so I could make that turn. So after I saw that the area was, you know, cleared enough so I can make that turn I made my turn into the next lane and I proceed (sic) driving down that area.
. . . .
After I made that lane change my front passenger Alfreda Easter she told me she said `You see that car over there in the median?' I said `Yes.' I seen it, it's just sitting there and then it made a brake like the driver hit their brakes real hard and the car moved. . . .
At that point when the vehicle hit its brakes, I hit mine to let the traffic behind me realize that something was going on up in front of us and so I proceeded slowing down and then the car it was, you know, after it had made a brake I said `well, it's a truck behind me it's coming up pretty fast.' They say, `well, don't worry about the truck long as you hit your brakes let them know something was going on up here he should slow down.'
And so we drove on a little bit further and the car made another brake and so I hit my brakes and slowed down further. Then after that I was hit. . . .
Mr. Gaines had a sharply different version of the events. He testified that he was driving his bread truck in the lane of I-49 that veers toward I-20 westbound. He first saw Ms. Brown's car in the far *326 left-hand lane of I-49. Mr. Gaines did not see Ms. Brown signal before she changed lanes to cross I-49, pulling in front of him. Mr. Gaines said that he hit his brakes, but was unable to avoid running into Ms. Brown. He said that he was not speeding prior to the accident.
Donald Cornett was driving himself and his wife Patricia in a vehicle traveling behind Mr. Gaines on I-49 and witnessed the accident. Mr. Cornett, who was driving the same speed as Mr. Gaines, said that he first saw Ms. Brown's car in the far left lane of I-49. He testified that he did not see Ms. Brown put on a turn signal:
I saw her cut in front of the truck. He locked his brakes up. Then I saw [Ms. Brown] go right underneath his truck in the front end and then I seen his truck up on one side then the other. Scared the hell out of me. I thought he was going  I thought I was going to have him on my truck because he locked them up so fast and I locked them up and we were all  it was the grace of God that he didn't lay that thing over right then.
He said that the brake lights on the bread truck came on immediately when Ms. Brown pulled in front of Mr. Gaines. He also stated that Mr. Gaines' truck swerved out of its lane at one point while Mr. Gaines was trying to avoid Ms. Brown's car. Mr. Cornett, who is color blind, described Ms. Brown's car, which is a dark green Honda, as dark red and like a Ford Escort.
Patricia Cornett also testified that Ms. Brown was in the far left lane of I-49 when she first saw the plaintiff. She testified that the first thing she noted was:
Seeing [Ms. Brown] cut over. There was a truck along side her that she almost  it was going straight. He kept going straight and had to put his brakes on. She cut over and then I saw the guy in the Flower truck  bread truck in front of us slam on his brakes and then we slammed our brakes on when we seen that.
. . . .
He almost flipped in front of us. He was going side to side putting his brakes on trying to avoid hitting her and then he had no choice but to straighten it out and to hit her because the way that she cut him off and we had to slam our brakes on. We almost hit him. We had to slam our brakes on.
She agreed that Mr. Gaines' truck swerved from side to side for about 30 to 40 seconds and traveled 300 or 400 feet prior to the impact.
The Cornetts' testimony conflicted in numerous respects. Mr. Cornett testified that he was driving their Mercury automobile, whereas Ms. Cornett remembered being in the couple's Suburban. Mr. Cornett stated they had just left a shop where he had gotten a knee brace; Ms. Cornett testified that they had been at a tool shop. They also differed in their recollection of whether and how long they remained at the scene after the accident and where they were going at the time this event occurred.
After the hearing was completed, the trial court concluded that Ms. Brown was entirely at fault for the accident. The judge observed:
I'm sorry to tell you this in court, Ms. Brown, but I did not find you to be a credible witness. Your version of what happened here absolutely makes no sense. Nobody else saw this blinker. According to your version, you move over and you're driving in front of the bread truck for a while and he's speeding and he slams into the back of you and that story makes absolutely no sense to the Court. The Court also notes that you failed to bring into court *327 the people who were in the car with you who could have corroborated your version of what happened here. In any event, I didn't find you to be a credible witness.
I found the defendant, Mr. Gaines, to be a very credible witness. I had the opportunity to observe him while he was testifying and if he couldn't recall something he admitted that and I found him to be credible.
The court observed that Ms. Cornett was shaking and very nervous while on the stand and noted that she did not recall the details of the accident as well as her husband did. The court then stated:
I found Mr. Cornett to be a completely credible witness. He was driving the car and so he had more reason to be attentive than his wife. So he had more reason to be paying attention to what was going on here. And I found him to be credible when he corroborated the other testimony that the plaintiff swerved across the three lanes of I-49 to get over to the I-20 exit area. And I also find that he corroborated Mr. Gaines' testimony in telling the court how quickly this accident happened. It was a matter of a few seconds and there was no opportunity for him to avoid striking the back of her car.
The trial court found that Ms. Brown's improper lane change prevented Mr. Gaines from being able to stop before crashing into the plaintiff. The trial court entered judgment dismissing Ms. Brown's claims with prejudice. Ms. Brown now appeals.

FAILURE TO CALL WITNESSES
Ms. Brown argues that the trial court erred in applying an adverse presumption against her for the decision not to call purported fact witnesses who were equally available to all parties and who had in fact settled their claims arising from the accident. This argument is without merit.
An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable, and is tempered by the fact that a party need only put on enough evidence to prove the case. Driscoll v. Stucker, XXXX-XXXX (La.1/19/05), 893 So.2d 32; Ollis v. Miller, 39,087 (La.App.2d Cir.10/29/04), 886 So.2d 1199; Louisiana Safety Association of Timbermen Self Insurers Fund v. Malone Lumber, Inc., 34,646 (La.App.2d Cir.6/20/01), 793 So.2d 218, writ denied, 2001-2557 (La.12/07/01), 803 So.2d 973. This adverse presumption is referred to as the "uncalled witness" rule and applies when a party has the power to produce witnesses whose testimony would elucidate the transaction or occurrence and fails to call such witnesses. Driscoll v. Stucker, supra. The presumption is rebuttable, particularly when the witness is equally available to the opposing party. Gaston v. Bobby Johnson Equipment Co., Inc., 34,028 (La.App.2d Cir.11/3/00), 771 So.2d 848; Louisiana Safety Association of Timbermen Self Insurers Fund v. Malone Lumber, Inc., supra.
In reasons for judgment, the trial court found that Mr. Gaines' version of the accident was credible and that Ms. Brown was not a credible witness. The court mentioned in passing that Ms. Brown failed to call as witnesses the passengers in her car who might have corroborated her version of the accident. The trial court did not actually rely on the presumption in making its decision. Based upon the record before us, we do not find that the trial court improperly applied the "uncalled witness" rule in deciding against Ms. Brown. The court simply found that the plaintiff's story made no sense, given all of the evidence presented. The plaintiff failed to put on *328 enough evidence to prove her case. We perceive no error of law sufficient to warrant a de novo review of the evidence. See Robinson v. Flowers, 41,798 (La. App.2d Cir.1/24/07), 949 So.2d 549.

WITNESS CREDIBILITY
Ms. Brown argues that the trial court erred in supporting its decision with the testimony of witnesses who were inconsistent with each other and whose testimony concerning core facts was clearly impeached. This argument is without merit.
In civil cases, the appropriate standard of review for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. The reviewing court should affirm where the district court judgment is not clearly wrong or manifestly erroneous. Driscoll v. Stucker, supra.
One of the basic tenets of the manifest error standard of review is that reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the court of appeal is convinced that had it been the trier of fact, it would have weighed the evidence differently. Driscoll v. Stucker, supra. Where there are two permissible views of the evidence, the trier of fact's choice between them cannot be manifestly erroneous or clearly wrong. Louisiana Association of Timbermen Self Insurers Fund v. Malone Lumber, Inc., supra.
When findings are based on determinations regarding credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Louisiana Safety Association of Timbermen Self Insurers Fund v. Rufino's Painting & Contractors, Inc., 40,620 (La.App.2d Cir.5/19/06), 930 So.2d 1186.
Additionally, the existence of negligence and the allocation of fault are factual determinations and subject to the trial court's great discretion. See Robert v. Nelson, 36,541 (La.App.2d Cir.12/11/02), 833 So.2d 1136; Henderson v. Sutherland's Lumber Co., 31,714 (La.App.2d Cir.3/31/99), 733 So.2d 667.
Ms. Brown cites the numerous differences between the testimony of Donald and Patricia Cornett and argues that the trial court's reliance on their testimony over that of the plaintiff was manifestly erroneous. Ms. Brown has thoroughly explored the differences and contradictions between their testimony and argues that the discrepancies leave room for her version of how the accident occurred to be plausible.
Any incongruity in the testimony of the Cornetts was on peripheral matters not directly bearing on the ultimate issue of *329 liability in this case. Their testimony and that of Mr. Gaines was consistent in stating that Ms. Brown did not signal a lane change, and that she suddenly cut in front of Mr. Gaines, causing him to hit her vehicle from the rear. Mr. Cornett was certain in his testimony that Ms. Brown's actions caused Mr. Gaines to slam on his brakes to avoid hitting her. Further, the Cornetts are disinterested witnesses who corroborated Mr. Gaines' version of the accident.
The trial court had ample opportunity to hear the thorough cross-examination of these witnesses by plaintiff's counsel and was fully apprised of the differences in their versions of events. The trial court accepted Mr. Cornett's testimony over Ms. Cornett's testimony because he was the person who was driving and because he seemed to have the better recollection of the event. Although the testimony of the witnesses in this case undoubtedly contains numerous differences and discrepancies, none of the inconsistencies show that the trial court's factual finding was manifestly erroneous or clearly wrong. The trial court did not err in finding that Mr. Gaines and his witnesses were credible witnesses, in finding Ms. Brown not to be credible, and in dismissing the plaintiff's claims.

FOLLOWING MOTORIST PRESUMPTION
Ms. Brown contends that the trial court erred in its determination that the "following motorist" presumption in favor of the plaintiff was inapplicable to the present case. This argument is without merit.
A following motorist is charged with a duty of great care regarding a preceding motorist. Robert v. Nelson, supra. This duty is derived in large measure from La. R.S. 32:81 which states, in pertinent part, that:
[T]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.
A well-established presumption exists that, in a rear-end collision, the following driver breached the standard of care set out in La. R.S. 32:81 and is presumed negligent. Robinson v. Flowers, supra. To escape liability, the following motorist has the burden to prove that he had his vehicle under control, closely observed the lead vehicle and followed at a safe distance or that the lead vehicle negligently created a hazard which the following vehicle could not reasonably avoid. Robinson v. Flowers, supra.
This rule and presumption was intended to cover the situation where the vehicle has been lawfully proceeding within the same lane as the following vehicle and a rear-end collision occurs as a result of the following motorist's failure to maintain a safe distance or to keep a proper lookout. Robert v. Nelson, supra.
Louisiana's jurisprudence recognizes several situations where, while the following car may have impacted the lead car from the rear, the following car is not presumed negligent. For example, a driver changing lanes without first determining that the move can be completed safely and then is struck from the rear by a following car, cannot rely on the rear-end collision presumption to shift the burden to the following driver. Robinson v. Flowers, supra.
La. R.S. 32:79(1) provides:
Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply.

*330 (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
La. R.S. 32:104 provides that a change of lanes by a driver must be indicated by a turn signal. The applicable rule from these two statutes is that a motorist who attempts to change traffic lanes on a multiple-lane highway must ascertain before turning that the maneuver can be made safely without endangering normal overtaking or oncoming traffic. Robert v. Nelson, supra.
The record shows that the "following motorist" presumption does not apply to the facts of this case. The trial court made findings of fact, based upon its reasonable evaluations of credibility, that Ms. Brown abruptly and at the last available moment swerved her car from the far left lane of I-49 across two lanes and then into the lane immediately in front of Mr. Gaines. Mr. Gaines could not avoid the collision. The court found that it was Ms. Brown who breached her duty under La. R.S. 32:79 not to move from her lane of travel without first ascertaining that the movement could be made with safety. The trial court's finding that Ms. Brown swerved in front of Mr. Gaines and was solely at fault in causing this accident is supported by the record and is not manifestly erroneous.

CONCLUSION
For the reasons stated above, the judgment of the trial court is affirmed. Costs in this court are assessed to the plaintiff, Shirley Brown.
AFFIRMED.
NOTES
[1] The passengers' suit, Alfreda Easter, et al. v. Direct Insurance Company, et al., 42,178-CA, was dismissed against Mr. Gaines, Flowers and Ace on August 11, 2006. The passengers' claims against Ms. Brown and Direct were dismissed on August 21, 2006.