793 So.2d 218 (2001)
LOUISIANA SAFETY ASSOCIATION OF TIMBERMEN SELF INSURERS FUND, Plaintiff-Appellee,
v.
MALONE LUMBER, INC., Defendant-Appellant.
No. 34,646-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2001.
Rehearing Denied August 16, 2001.
*219 Bobby L. Culpepper & Associates by Bobby L. Culpepper, Jonesboro, Counsel for Appellant.
*220 Provosty, Sadler, deLaunay, Fiorenza & Sobel by Joseph J. Bailey, Alexandria, Counsel for Appellee.
Before STEWART, GASKINS and KOSTELKA, JJ.
STEWART, J.
Malone Lumber, Inc., appeals a judgment of the trial court awarding $68,826.68, plus legal interest and attorney fees, to the Louisiana Safety Association of Timbermen, ("LSAT"), for additional premiums due on a policy of workers' compensation insurance in effect from April 1992 through July 1993. We find no error in the trial court's judgment and affirm.

FACTS
In April 1992, Ronald Craig Malone, the president of Malone Lumber, met with Richard Denny, an LSAT agent, about procuring workers' compensation coverage for Malone Lumber through LSAT, a selfinsurance fund. Malone Lumber operates a saw mill, a chip mill, and a lumber yard. The rates used to calculate the premiums were based on NCCI code numbers which were assigned to each area of operations at Malone Lumber.[1] The chip mill was assigned code 4239 and a rate of 4.14. Based on a payroll of $104,000, the premium for coverage for the chip mill operation was calculated to be $4,306. The saw mill was assigned code 2710 and a rate of 25.76. Based on a payroll of $130,284, the premium for coverage for the saw mill was calculated to be $33,561. Denny made the calculations as part of the application process for Malone Lumber to join LSAT and obtain workers' compensation coverage.
Malone Lumber was accepted into LSAT with coverage effective as of April 10, 1992. Thereafter, LSAT sent monthly premium reports to Malone Lumber. The reports listed the codes, classifications of operations, and applicable rates. Malone Lumber filled in the payroll information, calculated the monthly premium, and returned the form to LSAT. The monthly premium reports from April 1992 through November 1992 used code 4239 and rate 4.14 for calculation of the premium due for the chip mill coverage. The classification of the chip mill operation was listed as "Chip or Particle Board Mfg."
LSAT hired Louisiana Audit Service to perform a year end payroll audit of Malone Lumber's account. The audit was performed at Malone Lumber on December 8, 1992 by Gordon McDaniel, the owner of Louisiana Audit Service. In a letter dated December 8, 1992, McDaniel informed LSAT that the audit was made according to the classifications on the policy, but that he believed code 4239 to be incorrect in that it applied to manufacturers of particle board and other such goods. McDaniel wrote, "The chipping operation has always been included under code 2710, sawmill for every operation of this sort which I have audited. I call this to your attention and leave for your final decision." In the final audit billing for the period of April 10, 1992 through December 1, 1992, no payroll or premium was calculated using code 4239. Instead, code 2710 and the saw mill classification was used. The final audit billing indicated that Malone Lumber owed a balance of $34,002.12 on its premium payments.
Contrary to the change indicated on the final audit billing, the estimated billing statement for coverage from December 1, 1992 through December 1, 1993 included code 4239, the classification of "Paper Mfg.," and a rate of 4.14 for estimation of the premium for coverage of the chip mill. *221 However, above this information was the following notice:
THE PREMIUM FOR THIS COVERAGE WILL BE DETERMINED BY OUR MANUALS OF RULES, CLASSIFICATIONS, RATES AND RATING PLANS. ALL INFORMATION REQUIRED BELOW IS SUBJECT TO VERIFICATION AND CHANGE BY AUDIT.
The monthly premium reports sent by LSAT to Malone Lumber for calculation of the monthly premium based on payroll included the code 4239 and the classification "Paper Mfg." for the chip mill operations. From December 1992 through July 1993, Malone Lumber continued to calculate its monthly premium using code 4239 for the chip mill.
By way of written notice dated June 21, 1993, LSAT informed Malone Lumber that its workers' compensation coverage would be canceled effective July 21, 1993 for failure to meet underwriting requirements. The record indicates that this failure was attributable to the high rate of claims over the coverage period. Prior to cancellation, Malone received notice of the final audit for the billing period of April 10, 1992 through December 1, 1992, which showed a balance due. Malone wrote to LSAT on July 19, 1993 asking that it review the audit. Malone complained that code 4239 was improperly deleted. He claimed that Richard Denny, the representative who sold him the policy, had called LSAT to find out whether the chip mill operation qualified for code 4239 and that the code was used because another chip mill and saw mill business was using the same code.
Following cancellation, a final audit of Malone Lumber was conducted by Gordon McDaniel on August 11, 1993. McDaniel again informed LSAT in a letter dated August 11, 1993 that the classification of the chip mill as code 4239 for paper manufacturing was incorrect. McDaniel further informed LSAT that, subject to its final approval, he used code 2710 in conducting the audit and that 2710 was the proper classification as indicated by the "scopes manual." The final audit billing for the period of December 1, 1992 through July 31, 1993 showed a balance due of $38,415.56. Neither this amount nor the balance due on the final audit billing for the first year of coverage was paid by Malone Lumber.
In April 1995, LSAT filed suit against Malone Lumber to collect an unpaid balance, after the addition of charges and the deduction of payments and credits, of $68,826.68 along with reasonable attorney's fees and costs. Malone Lumber filed a reconventional demand for damages for loss of production during the time that it was shut down due to lack of workers' compensation insurance following cancellation by LSAT. A trial took place on February 4, 1997, after which the trial court issued written reasons and rendered judgment in favor of LSAT, awarding the sum of $68,826.68 along with attorney's fees and costs. Following the denial of a motion for a new trial, Malone Lumber filed the instant appeal.

DISCUSSION
Malone Lumber asserts two assignments of error on appeal. The first assignment is that the trial court committed manifest error in finding that Malone Lumber was indebted to LSAT for the additional premiums. The second assignment is that the trial court committed legal error in failing to allow the introduction into evidence of a letter from the plaintiff's counsel to the defendant's counsel.
It is well settled that an appellate court may not set aside a trial court's findings of fact in the absence of manifest *222 error or unless such findings are clearly wrong. Reasonable evaluations of credibility and inferences of fact should not be set aside, even if the appellate court may believe that its own evaluations and inferences are as reasonable. If the trier of fact's findings are reasonable in light of the record when reviewed in its entirety, an appellate court may not reverse even if convinced that, as a trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the trier of fact's choice between them cannot be manifestly erroneous or clearly wrong. Ferrell v. Fireman's Fund Ins. Co., 650 So.2d 742 (La. 1995); Rosell v. ESCO, 549 So.2d 840 (La. 1989).
The suit brought by LSAT against Malone Lumber for the collection of unpaid insurance premiums arises from a conventional obligation created by contract between the parties.[2]Louisiana NBOA Construction and Self Insurers Fund v. Liu, 30,041 (La.App.2d Cir.12/10/97), 707 So.2d 1002; Fidelity and Casualty Company of New York v. A & M Construction, Inc., 96-1326 (La.App. 1st Cir.3/27/97), 692 So.2d 28. A party who demands performance of an obligation must prove the existence of the obligation. La. C.C. art. 1831. Once the plaintiff meets the initial burden of establishing a prima facie case of the existence of the obligation by a preponderance of the evidence, the burden shifts to the defendant to come forth with sufficient evidence to rebut or cast doubt upon the plaintiff's case. Artificial Lift, Inc. v. Production Specialties, Inc., 626 So.2d 859, 862 (La. App. 3d Cir.1993), writ denied, 94-0112 (La.3/11/94), 634 So.2d 394 and cases cited therein. Proof by a preponderance of the evidence exists when the evidence, taken as whole, shows that the fact sought to be proven is more probable than not. Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982). Prima facie evidence is evidence sufficient to establish a given fact, which if not rebutted or contradicted, will remain sufficient. Artificial Lift, Inc. v. Production Specialties, Inc., supra.
The dispute in the case sub judice centered on whether LSAT could change the code and classification of the chip mill unilaterally and thereby increase the premium for workers' compensation coverage applicable to the chip mill. The position of Malone Lumber is that it did not owe the additional premium. Malone Lumber argues that LSAT did not prove that an additional premium payment was due, particularly since it failed to call Richard Denny, the agent who sold the policy and prepared the application. Malone Lumber also disagrees with the trial court's finding that the insurance premium was adjusted in accordance with the type of business in which the insured was engaged. Also, Malone Lumber argues that LSAT failed to notify it, for approximately seven months, of additional premiums due as a result of the December 1992 audit.
LSAT presented the testimony of Douglas Wells, the administrator of the self insurance fund at the time of trial. Wells testified that the worksheet used by Richard Denny to calculate the premiums for Malone Lumber's workers' compensation coverage is not a binding contract; rather, it is used by agents to work up quotes when soliciting business. Review of the worksheet shows that the information on it was copied to an application which includes the classifications and codes used to determine the premium amounts. Wells explained *223 that the codes used are based on discussions between the agent and the customer. Otherwise, there is no verification at the time of the application as to whether the information is correct. Verification takes place at the end of the fund year when a payroll audit is conducted. Wells explained that LSAT has an outside auditing firm conduct an onsite physical payroll audit of customers at the end of each fund year. The purpose of the audit is to determine the accuracy of payroll amounts and class codes. The auditor prepares a report which is sent to LSAT and processed, after which a final bill based on the findings of the auditor is prepared and sent to the insured. Malone Lumber was audited in December 1992 and again after cancellation. Wells testified that classification codes can change as a result of an audit. Wells also testified that classification codes are set forth in the "scopes manual" which is issued by the NCCI.[3]
Gordon McDaniel also testified on behalf of LSAT. McDaniel explained that his commitment as an auditor is to verify payrolls and properly classify operations. If operations are not properly classified, he calls the problem to the attention of the insurer as he did in this instance by informing LSAT that Malone Lumber's chip mill operation was not properly classified as paper manufacturing under code 4239. McDaniel explained that he determined that the chip mill was improperly classified based on other audits he performed on similar operations and on the information in the scopes manual. While McDaniel admitted that he did not inspect Malone Lumber's operations, he learned through questioning during the audit that Malone Lumber conducted a chip mill operation and he observed the records of Malone Lumber which referred to the operations as a chip mill. McDaniel explained that code 4239 applies to paper manufacturing and that, as far as he knew, Malone Lumber was not engaged in manufacturing paper. He further explained that the correct code and classification for a chip mill would be code 2710, which although classified as a sawmill includes the production of wood chips. McDaniel stated that there is no separate code for chip mills. Counsel for Malone Lumber questioned McDaniel about the possible applicability of code 4206 to the chip mill operation. This code is classified as "Pulp Mfg.Ground Wood Process." McDaniel did not believe this code would apply. He believed the issue to be whether the chip mill produces chips or pulp, and he concluded that it produced chips as an end product, rather than pulp.
McDaniel's testimony and conclusion that code 2710 is the proper code for the chip mill is supported by the definitions from the scopes manual which were admitted into evidence. The scope of code 4239 states, "Code 4239 is applied to insureds engaged in the manufacture of paper." The scope goes on to describe the paper manufacturing process. Code 4239 also applies, as provided in its scope, to "insureds engaged in the manufacture of chipboards and boards of the type enumerated in this classification's footnote." This process is also described. Nothing in the record indicates that Malone Lumber's chip mill operation involved either the manufacture of paper or chipboards as described in the scope for code 4239. Reference was also made to the possible applicability of code 4206 (Pulp Mfg.Ground Wood). The scope of code 4206 states that it applies
to insureds engaged in the manufacture of pulp utilizing the mechanical or ground wood process. Debarking or chipping mill operations are contemplated within the scope of this classification *224 provided such operations are performed at the pulp mill.
Nothing in the record indicates that Malone Lumber's chip mill operation was performed at a pulp mill or that any of the operations involved the manufacture of pulp using a mechanical or ground wood process. Finally the scope of code 2710 specifically provides that it "applies to the production of wood chips or wood shavings."
Considering the testimony of McDaniel and Wells along with the definitions introduced into evidence and the lack of rebuttal evidence from Malone Lumber regarding the nature of its chip mill operations, we believe that the chip mill operations were improperly classified under code 4239 and that the proper code was 2710 as recommended by McDaniel. Based on the audits, additional premiums were due for the chip mill's workers' compensation coverage. We also note that Craig Malone, the president of Malone Lumber testified that there was a "drastic difference in money" depending on which code was used for classifying the chip mill. He stated that he would likely not have joined LSAT if code 2710 had been used. Malone mentioned that LSAT was not backed by the state and that the price otherwise would have been so close to other quotes he obtained that it would not have made a difference. This testimony suggests that Malone knew that he was getting a break in the cost of the premium by having the chip mill classified under code 4239. As a sophisticated businessman with prior experience obtaining workers' compensation coverage, Malone was no doubt aware of the workings of the compensation insurance business, including the fact that audits could possibly result in classification and premium changes.
Although Malone Lumber complains that it was not notified of the premium increase until almost seven months after the audit, it points to nothing requiring notice within a particular time period. We find no merit in Malone Lumber's argument that a negative inference should be drawn against LSAT from its failure to call Richard Denny to testify. An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify. However, the presumption is rebuttable, particularly when the witness is equally available to the opposing party. Gaston v. Bobby Johnson Equipment Co. Inc., 34,028 (La.App.2d Cir.11/3/00), 771 So.2d 848. The adverse presumption rule is also tempered by the fact that a party need only put on enough evidence to prove the case. State Farm Fire & Casualty Co. v. Torregano, 00-141 (La.App. 5th Cir.9/26/00), 769 So.2d 754. There was no mention of Denny's whereabouts at the time of trial, and there was no showing that he was somehow within LSAT's control at the time of trial. Furthermore, we find that the evidence presented by LSAT was sufficient to prove its claim by a preponderance of the evidence.
Finally, Malone Lumber argues that the trial court erred in refusing to allow into evidence a letter from LSAT's counsel to its own counsel which included a statement indicating that the operation must not involve a chipmill, which is highly automated and has few accidents, because of the number of claims that had been filed. Malone Lumber claims that the letter was relevant because it was trying to prove that the chip mill's classification and code were changed because of the number of claims and not because of the auditor's recommendation.
Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. All relevant evidence is admissible, except as *225 otherwise provided. La. C.E. art. 402. Generally, the trial court has great discretion concerning the admission or exclusion of evidence on the grounds of relevance, and its decision to admit or exclude evidence will not be reversed in the absence of a finding of an abuse of discretion. Dixon v. Winn-Dixie Louisiana, Inc., 93-1627 (La.App. 4th Cir.5/17/94), 638 So.2d 306; Polotzola v. Missouri Pacific Railroad Co., 610 So.2d 903 (La.App. 1st Cir. 1992).
We find no abuse of discretion on the part of the trial court in disallowing introduction of the letter on behalf of Malone Lumber. The letter bears no relevance to a determination of whether Malone Lumber was required to pay additional premiums. Neither the letter nor any evidence introduced at trial establishes that the code and classification of the chip mill was changed for any reason other than the auditor's recommendation. Even if this letter were considered along with the evidence that was introduced at trial, it would not be sufficient to rebut the proof put forth by LSAT regarding the proper classification and the additional premium amounts owed by Malone Lumber.

CONCLUSION
Finding no manifest error of fact or error of law by trial court, we affirm its judgment in favor of the Louisiana Safety Association of Timbermen. Costs of appeal are assessed to Malone Lumber, Inc.
AFFIRMED.

APPLICATION FOR REHEARING
Before STEWART, GASKINS, PEATROSS, KOSTELKA, and DREW, JJ.
Rehearing denied.
NOTES
[1] NCCI refers to the National Council on Compensation Insurance.
[2] We note that no contract or policy was entered into evidence by either party. However, there was not dispute as to the contractual relationship between them and no dispute as to any terms or conditions that may be contained in the policy or contract.
[3] The "scopes manual" refers to the Scopes of Basic Manual Classifications. Definitions of classifications referred to are from the July 1996 edition.