GUIDRY, J.
|gIn this medical malpractice action, plaintiff-appellant, David Verbois, appeals a district court judgment dismissing his medical review panel complaint against defendant-appellee, Dr. Jonathan P. Taylor, on an exception of prescription. For the following reasons, we affirm.,
FACTUAL AND PROCEDURAL BACKGROUND
On May 24, 2011, Dr. Taylor performed surgery to repair a ventral hernia in a graft scar Mr. Verbois had as a result of a prior coronary artery bypass surgery. Following the May 2011 surgery, Mr. Ver-bois continued to experience symptoms of nausea, vomiting, diarrhea, fever, chills, and abdominal ■ pain. He was readmitted to the hospital in June 2011, at which time a CT scan revealed fluid collection at the splenic hilum, which Dr. Taylor dismissed as benign.
Mr. Verbois continued to experience nausea, vomiting, diarrhea, fever, chills, and abdominal pain. On October 7, 2011, Dr. Taylor performed a second surgery during which he removed Mr. Verbois’ gallbladder (cholecystectomy), although “[tjhére appeared to be no abnormal appearance of the gallbladder” at that time, ’“other than the presence of a single small calcified stone.” Mr, Verbois’ condition continued to decline.
In December 2011, a CT scan revealed a perforation of the stomach at the level of the gastric sleeve placed during gastric bypass surgery performed by Dr. Karl LeBlanc in 2009. Dr. Taylor performed a third surgery on Mr. Verbois on December 22, 2011, during which he elected not to remove Mr. Verbois’ spleen as he had intended. During the surgery, Dr. Taylor “took down adhesions between the spleen and the stomach, but [d]id not notice any leak anywhere along the staple line, although there still was an amount of sero-purulent fluid between the spleen and this portion of the staple line.”' According to Mr. Verbois, Dr. Taylor then Lover sewed the staple dine, placed an omental patch, and inserted drains and a feeding tube.
■ "Following his surgery, Mr. Verbois requested a' consultation with Dr. LeBlanc. Dr. LeBlanc informed Mr. Verbois he could not become involved in the case while Mr. Verbois was under Dr. Taylor’s care. Accordingly, no. consultation with Dr. LeBÍanc occurred.
Mr. Verbois was hospitalized again in January 2012 for continued gastric leaks. During his hospitalization, Dr. Taylor con- *61 suited with another physician, who placed Mr. Verbois on an1 IV antibiotic due to several abdominal abscesses.
After seeing Dr. Taylor for the last time at an office visit in March 2012, Mr. Ver-bois terminated Dr. Taylor’s services. He then began treatment with Dr. LeBlanc in April 2012 for multiple abdominal abscesses. In September 2012, Dr. LeBlanc removed Mr. Verbois’ entire stomach (gas-trectomy).
Thereafter, on July 26,' 2013,[1] Mr. Ver-bois filed a complaint with the Division of Administration requesting a medical review panel (MRP) to review his claims against Dr. Taylor for alleged acts of malpractice occurring from May 24, 2011, through March 17, 2012. Mr. Verbois asserted that he sustained injuries and disability as a result of various negligent acts and/or deviations from the applicable standard of care by Dr. Taylor. These alleged negligent acts and/or deviations included: causing a gastric leak by failing to exercise due care and diligence in performing the ventral hernia repair’; removing his gallbladder unnecessarily; failing to timely administer the proper, diagnostic testing to discover the presence and location of the gastric leak; and failing to timely administer proper antibiotic therapy.
^4On February 25, 2014, Dr. Taylor filed a peremptory exception in the district court raising the objection of prescription to Mr. Verbois’ medical malpractice complaint. Following a hearing, the district court sustained the exception and dismissed Mr. Verbois’ medical review panel complaint. Mr. Verbois now appeals.
DISCUSSION
On appeal, Mr, Verbois argues his medical malpractice complaint was filed timely since he filed it within one year of Dr. LeBlanc advising him of Dr. Taylor’s negligence, as well as within three years of the first act of hegligence committed by Dr. Taylor in performing the ventral hernia repair in May 2011. He contends that even at the time he discharged Dr. Taylor and consulted Dr. LeBlanc in April 2012, he had. no actual or constructive knowledge of any facts indicating negligence by Dr. Taylor that could have commenced prescription. Mr. Verbois asserts he was ignorant of any facts upon which to base a medical malpractice claim until after Dr. LeBlanc was able to stabilize his condition enough to perform exploratory surgery in September 2012. He claims it was only as a result of this surgery that he obtained sufficient knowledge of Dr. Taylor’s negligence to commence prescription.
In opposition, Dr. Taylor argues Mr. Verbois had actual or constructive knowledge of a potential malpractice claim sufficient to begin prescription at least by March 2012 when he terminated Dr. Taylor’s services. In support of this position, Dr. Taylor relies on the admissions Mr. Verbois made- during his deposition testimony that he was concerned as early as December of 2011 whether Dr. Taylor was treating him properly, the fact that Mr. Verbois attempted to obtain a second opinion from Dr. LeBlanc at that time, and Mr. Verbois’ decision to 1 ¿terminate Dr. Taylor’s services in March 2012[2] and seek treatment with Dr. LeBlanc.
*62 The prescriptive period for medical malpractice actions is set forth in La. R.S. 9:5628(A), which provides:
No action for damages for injury or death against any physician ... duly licensed under the laws of this state ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. [Emphasis added.]
This statute sets forth two prescriptive limits applicable to medical malpractice claims, namely, one year from the date of the alleged act or one year from the date of discovery with a three-year limitation from the date of the alleged act, omission or neglect to bring such claims (if the negligence is not immediately apparent). See Campo v. Correa, 01-2707, p. 9 (La.6/21/02), 828 So.2d 502, 509.
Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. If, however, the action is prescribed on its face, the patient bears the burden of showing that the action has not prescribed; Lawrence v. Our Lady of the Lake Hospital, 10-0849, p. 5 (La.App. 1st Cir.10/29/10), 48 So.3d 1281, 1285. On the trial of the prescription exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. The general rule regarding the ex-ceptor’s burden of proof is that a petition should not be found prescribed on its face if it is brought within one year | fiof the date of discovery and facts alleged with particularity in the petition show that the patient was unaware of the malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent or unreasonable action of the plaintiff. Campo, 01-2707 at p. 9, 828 So.2d at 509.
However, when, as in the instant case, the plaintiff is met with an exception of prescription filed in the district court during the pending medical panel review under the Medical Malpractice Act, the plaintiff is required to prove the defense of contra non valentem as allowed under La. R.S. 9:5628. Lawrence, 10-0849 at p. 6, 48 So.3d at 1285; Holmes v. LSU/E.A. Conway Medical Center, 43,662, p. 9 (La.App. 2nd Cir.10/22/08), 997 So.2d 605, 611.
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Campo, 01-2707 at pp. 11-12, 828 So.2d at 510-11. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start the running of prescription. Campo, 01-2707 at p. 12, 828 So.2d at 511.
*63 A plaintiffs mere apprehension that something may be wrong is insufficient to commence prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Campo, 01-2707 at p. 12, 828 So.2d at 511. Even if a malpractice victim is aware that an undesirable condition has developed after medical treatment, such knowledge does not equate to knowledge of everything to which inquiry might lead. Campo, 01-2707 at p. 15, 828 So.2d at 512-513. Prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment related. Campo, 01-2707 at p. 12, 828 So.2d at 511. |7The ultimate issue .is the reasonableness of the patient’s action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant’s conduct. Campo, 01-2707 at p. 12, 828 So.2d at 511.
In the instant case, both parties submitted excerpts of Mr. Verbois deposition testimony in connection with the exception of prescription. In his deposition, Mr. Ver-bois stated that in December 2011, he started questioning whether Dr. Taylor knew what he was doing and whether he was treating him properly. Mr. Verbois stated that his concern started when Dr. Taylor knew there was a leak and held Mr. Verbois in the hospital all through Christmas 2011 and never did anything to correct the problem. At that point, Mr. Ver-bois Stated that his concern was raised to the level of wanting another doctor, and he contacted Dr. LeBlanc. Mr. Verbois stated that his health was steadily declining at that point, that he was skin and bones and was laying in the bed dying, and he wanted another doctor to determine whether he had been treated properly. Dr. LeBlanc, however, would not treat Mr. Verbois while he was still under the care of Dr. Taylor. Mr; Verbois continued in Dr.- Taylor’s care until March 2012, and Mr. Ver-bois stated that his concerns regarding the care he was receiving from Dr. Taylor continued through that time. When Mr. Verbois’ condition 'continued to decline, he madé the ultimate decision in March 2012 to discontinue his care with Dr. Taylor and thereafter sought treatment from Dr. Le-Blanc.
From, our review of the record, Mr. Verbois’, deposition testimony establishes that he had sufficient information’ to excite attention and put him on guard to call for inquiry as early as December 2011 when he was concerned .about his care to the point of seeking .another doctor but certainly no later than. March 2012 when he.finally decided to- terminate Dr. Taylor as his physician and seek care from Dr. LeBlanc; Accordingly, prescription commenced, at the latest, in March 2012. , Because Mr. Verbois did not file his complaint against Dr. Taylor | ¿with'the Division of Administration until July 26, 2013, his claim is clearly prescribed. Therefore, we find no error in the district court’s judgment sustaining the exception of prescription.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the district court maintaining the peremptory exception of prescription filed by Dr. Taylor and dismissing Mr. Verbois’ medical review panel complaint. All costs of this appeal are assessed to the plaintiff, David Verbois.
AFFIRMED.
CHUTZ, J.-, dissents and assigns reasons.

. Dr, Taylor’s contention that, his services were terminated in March 2012 is apparently based on the fact that Mr. Verbois1 last office visit occurred on March 1, 2012. Mr. Verbois denied he verbally informed Dr. Taylor of his termination at this office visit, stating he sent a letter to' Dr. Taylor informing him of his *62 termination. Although the date of the termination letter is unclear, it is clear that Dr. Taylor’s services had been terminated by the time that Mr. Verbois consulted Dr. LeBlanc in April 2012.