# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-559


**IN RE: DANA BROUSSARD**
**MEDICAL REVIEW PANEL**



**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2022-1264, DIVISION C
HONORABLE THOMAS FREDERICK, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHARON DARVILLE WILSON
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Sharon Darville Wilson, Judges.



**AFFIRMED.**

**Adam P. Gulotta**
**Judice & Adley**
**(A Professional Law Corporation)**
**Post Office Drawer 51769**
**Lafayette, Louisiana  70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Dr. Ilyas Munshi**

**John L. Hammons**
**Cornell R. Flournoy**
**William W. Murray, Jr.**
**R. Clayton Christian**
**Nelson & Hammons**
**A Professional Law Corporation**
**705 Milam Street**
**Shreveport, Louisiana 71101**
**(318) 227-2401**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
     **Dana Broussard and Byron Broussard**

**J. Ryan Pierret**
**Judice & Adley**
**(A Professional Law Corporation)**
**Post Office Drawer 51769**
**Lafayette, Louisiana  70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Dr. Eric Powell Trawick**

**WILSON, Judge.**

In this medical malpractice suit, the patient, Dana Broussard (Mrs. Broussard), and her husband, Byron Broussard (hereinafter collectively referred to as the Broussards), appeal the dismissal of their claims by the granting of exceptions of prescription brought on behalf of the healthcare providers, Dr. Ilyas Munshi (Dr. Munshi) and Dr. Eric Powell Trawick (Dr. Trawick).

## I.

## ISSUES

The Broussards allege two assignments of error. First, they argue that the trial court erred in failing to find that the date of discovery of their causes of action was November 16, 2020. Second, the Broussards assert that the trial court erred in failing to apply the "uncalled witness" rule set forth in *Driscoll v. Stucker*, 04-589 (La. 1/19/05), 893 So.2d 32, and its corresponding adverse presumption because neither Dr. Munshi nor Dr. Trawick testified at the hearing on the exceptions of prescription.

## II.

## FACTS AND PROCEDURAL HISTORY

On August 6, 2019, Mrs. Broussard, who worked as a hairdresser, saw Dr. Munshi, a neurosurgeon, for complaints of constant neck pain radiating into her right upper extremity. On August 12, 2019, Dr. Munshi performed a cervical discectomy with the placement of hardware. Dr. Munshi also performed a right carpal tunnel release at that time. Mrs. Broussard was discharged from Lafayette General Medical Center the following day.

Postoperatively, Mrs. Broussard complained of discomfort in her throat. She saw Dr. Munshi on August 27, 2019, and October 8, 2019, and continued to complain of cervical pain. Dr. Munshi ordered physical therapy and an MRI of the

cervical spine. On October 16, 2019, the MRI, with and without contrast, was completed. The radiologist, Dr. Mark Stephan (Dr. Stephan), interpreted the MRI as showing "some hardware effacement[.]" An X-ray of the cervical spine was also performed on October 16, 2019. On the report of that X-ray, Dr. Stephan noted, in part, that "[n]o broken hardware is identified. There is an approximate 2 mm interval between the anterior aspect of the C5 vertebral body in the posterior aspect of the cortical plate at this level. Correlate clinically."

On October 23, 2019, Mrs. Broussard underwent an upper GI series ordered by her internist, Dr. Patrick Griffith (Dr. Griffith). Mrs. Broussard continued to complain of pain and reported the sensation of having something stuck in her throat to Dr. Munshi on October 24, 2019. This was the last time that Dr. Munshi treated Mrs. Broussard. He and Dr. Griffith referred Mrs. Broussard to Dr. Trawick, a gastroenterologist, who diagnosed an esophageal stricture and performed a dilation of the esophagus. Mrs. Broussard also had an esophageal motility study done in June of 2020.

On November 16, 2020, Mrs. Broussard was evaluated by an orthodontist, Dr. John Moffett, for complaints associated with temporomandibular joint dysfunction (TMJ). Dr. Moffett ordered a panoramic X-ray, and the film was shown to Mrs. Broussard by the person who took the X-ray. Mrs. Broussard indicated that she took a picture of the X-ray and went home and looked online for what discectomies looked like and noticed that hers did not look the same as the pictures she found online. Mrs. Broussard alleges that this X-ray revealed that the hardware from her cervical surgery was out of position.

Mrs. Broussard took the picture of her panoramic X-ray to Dr. Griffith, who ordered X-rays of Mrs. Broussard's cervical spine. These were performed on

2

December 7, 2020. The report in Dr. Griffith's records noted that Mrs. Broussard "states feels like something is in throat since surgery[.]" The radiologist, Dr. Al Rozas, noted his findings, in part, as "Orthopedic hardware traverses anterior aspects of C5-C7 with the superior anchoring screws appearing to have migrated out of the C5 vertebral body and into the disc space of C4-C5 and the body of the fixation plate having migrated anteriorly."

On December 14, 2020, on the referral of Dr. Griffith, Mrs. Broussard saw Dr. Jayme Trahan, a neurosurgeon, for her continued complaints of neck pain. Mrs. Broussard alleges that Dr. Trahan explained to her that the mal-positioned hardware, which was noted on the October 16, 2019 MRI, was the cause of her complaints, symptoms, and complications. Dr. Trahan recommended revision surgery to remove the hardware, and that surgery was performed by Dr. Jason Cormier on January 19, 2021.

Dr. Munshi and Dr. Trawick, at all times pertinent herein, were qualified healthcare providers pursuant to the Louisiana Medical Malpractice Act. Therefore, on September 8, 2021, the Broussards filed a complaint requesting the formation of a Medical Review Panel to review the allegations of medical malpractice against Dr. Munshi and Dr. Trawick. The Broussards alleged that the date of discovery of their claims was November 16, 2020. Mrs. Broussard alleged that she suffered damages as a result of Dr. Munshi's failure to properly position the hardware during surgery and from his alleged failure to address the problems associated with the hardware positioning during the postoperative period. Mrs. Broussard further alleged that she suffered damages from the negligent, ill-advised, and needless esophageal dilation performed by Dr. Trawick.

3

In response to the filing of the complaint, Dr. Munshi filed a petition in the district court to have a docket number assigned to the pending Medical Review Panel proceeding so that he could file an exception of prescription. After the order assigning a docket number was signed, Dr. Munshi and Dr. Trawick each filed an exception of prescription alleging that the complaint dated September 8, 2021, was filed well beyond the applicable prescriptive period.

The hearing on both exceptions of prescription was held on May 16, 2022. Mrs. Broussard testified at the hearing, and documents, including certified medical records and the transcript of Mrs. Broussard's deposition, were introduced into evidence. At the hearing, the trial court sustained the exceptions of prescription and found "that there were multiple occasions where the plaintiff displayed signs of constructive notice prior to September of 2020." The trial court also found that the doctrine of contra non valentem was inapplicable because there was "no evidence that anyone intentionally concealed the results of an MRI or any x-rays."

A judgment sustaining the exception of prescription filed by Dr. Munshi and dismissing, with prejudice, all of the claims against him was signed on May 23, 2022. A judgment sustaining the exception of prescription filed by Dr. Trawick and dismissing, with prejudice, all of the claims against him was signed on May 23, 2022. This timely devolutive appeal by the Broussards followed.

## III.

## STANDARD OF REVIEW

"[T]he standard of review of a judgment pertaining to an exception of prescription turns on whether evidence is introduced at the hearing of the exception." *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-61, p. 4 (La. 10/10/21), 333 So.3d 368, 373. When no evidence is submitted, "the exception 'must be decided

upon the facts alleged in the petition with all of the allegations accepted as true[,]'" and the reviewing court makes a determination whether the trial court's decision was legally correct. *Id.* (quoting *Lomont v. Bennett*, 14-2483, p. 8 (La. 6/30/15), 172 So.3d 620, 627, *cert. denied*, 577 U.S. 119, 136 S.Ct. 1167 (2016)). "When evidence is introduced at the hearing, a court need not accept the allegations of the petition as true, and the lower court decisions are to be reviewed under a manifest error-clearly wrong standard of review." *Mitchell*, 333 So.3d at 373. If the factual findings of the trial court "are reasonable in light of the record reviewed in its entirety, an appellate court cannot reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Lomont*, 172 So.3d at 627.

In this case, evidence was introduced and testimony was given at the hearing on the exceptions of prescription. Accordingly, we will apply the manifest error-clearly wrong standard of review. *Mitchell*, 333 So.3d 365.

**IV.**

**LAW AND DISCUSSION**

The applicable prescriptive period is set forth in La.R.S. 9:5628(A):

> No action for damages for injury or death against any physician . . . duly licensed under the laws of this state . . ., whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

The threshold issue that must be determined by this court is the date of discovery of the alleged malpractice.

5

Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. *Percy v. State, E.A. Conway Memorial Hosp.,* 478 So.2d 570 (La.App. 2 Cir. 1985). A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. *Ledet v. Miller*, 459 So.2d 202 (La.App. 3 Cir. 1984), *writ denied,* 463 So.2d 603 (La.1985); *Bayonne v. Hartford Ins*[.] *Co.,* 353 So.2d 1051 (La.App. 2 Cir. 1977); *Opelousas* Gen[.] *Hosp*[.] *v. Guillory,* 429 So.2d 550 (La.App. 3 Cir. 1983). Nevertheless, a plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. *Gunter v. Plauche,* 439 So.2d 437, 439 (La.1983). Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was *reasonable* for the plaintiff not to recognize that the condition might be treatment related. *Griffin v. Kinberger,* 507 So.2d 821 (La.1987). The ultimate issue is the *reasonableness* of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct. *See Griffin,* 507 So.2d at 821.

*Campo v. Correa*, 01-2707, pp. 11-12 (La. 6/21/02), 828 So.2d 502, 510-511 (emphasis in original).

Mrs. Broussard alleges that the date of discovery was November 16, 2020, when the panoramic X-ray was performed by Dr. Moffett. Mrs. Broussard argues that she was evaluated by four different physicians (Dr. Munshi, Dr. Trawick, Dr. Stephan, and Dr. Griffith)[1] between the date of the surgery, August 12, 2019, and the date of the panoramic X-ray on November 16, 2020, and that all four of them knew or should have known of the hardware effacement shown on the October 16, 2019 MRI but failed to advise her of those results. Mrs. Broussard alleges that the

---

[1] Neither Dr. Stephan nor Dr. Griffith are named as defendants in the Broussards' medical malpractice complaint.

6

conduct of Dr. Munshi and Dr. Trawick prevented her from discovering the "true facts and circumstances that would have explained [her] continued postoperative complaints and complications."

Contra non valentem is "a jurisprudentially-created exception to prescription, adopted to 'soften the harshness of prescriptive statutes[.]'" *Mitchell*, 333 So.3d at 374 (quoting *Carter v. Haygood*, 04-646, p. 11 (La. 1/19/05), 892 So.2d 1261, 1268). The exception generally provides that "prescription does not run against a person who could not bring his suit." *Carter*, 892 So.2d at 1268. There are four categories of contra non valentem recognized by Louisiana law:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Id.*

The third category applies when the physician "himself has done some act effectually to prevent the victim from availing himself of his cause of action for medical malpractice." *Fontenot v. ABC Ins. Co.*, 95-1707, p. 5 (La. 6/7/96), 674 So.2d 960, 963. However, "[t]o trigger application of the third category, a physician's conduct must rise to the level of concealment, misrepresentation, fraud or ill practices." *Id.* "The jurisprudence establishes that, to defeat a well-founded exception of prescription, it is 'necessary for a plaintiff to prove ill motive or intentional concealment on the physician's part.' Without such proof the exception must be maintained." *McCauley v. Stubbs*, 17-933, p. 7 (La.App. 3 Cir. 4/25/18), 245 So.3d 41, 46-47 [quoting *Braud v. Cenac*, 03-1696, p. 5 (La.App. 3 Cir.

7/14/04), 879 So.2d 896, 901, *writ denied*, 04-2101 (La. 11/15/04), 887 So.2d 484]. In *McCauley*, this court found no proof of fraud, misrepresentation, or intentional concealment because the plaintiff presented no evidence that "he was denied access to his medical records or was prevented from seeking other medical treatment" and where the defendant physician's office notes indicated that a second opinion with another physician "may be considered." *Id.*

Dr. Munshi alleged that, based on Mrs. Broussard's own testimony, "she knew or should have known of the alleged malpractice almost immediately after the surgery, but no later than two months after surgery." In her deposition, taken February 7, 2022, Mrs. Broussard testified as follows:

Q    You went to see Dr. Griffith August 29, 2019, so that's about three weeks after your surgery.

A    Yes.

Q    You saw him, it looks like, for some sinus problems.

A    Yeah. I didn't know what was - - . . . I was bothered here so I went and told him . . . I had surgery[,] and I wanted to know if he thought it was anything to do with my surgery or was it, you know, I wanted him to look in my throat and see if I was having some . . . allergy stuff. And he said, yeah, that I - - I did have some allergy things going on with my . . .

. . . .

Q    . . . and this is from January 11 of 2021[.]

. . . .

Q    "Feels like she's had something in her throat since surgery with Dr. Munshi on August 12 of 2019." So that's pretty much since the time . . . you had the procedure, you felt that way?

A    Um-hmm, yes, correct.

Q    You'd been in constant pain?

A    Yes.

8

Q       Is that the pain that you were describing earlier, the neck and the
- -

A       Yes.

Q       - - back of your throat?

A       Yes.

Q       Said, it feel [sic] like you need to vomit?

A       Yes.

        . . . .

Q       Okay.  And when you move your neck in certain positions, feels
like it sticks from the front to back.  You haven't quite used that
language yet, so - - so explain what that means.

A       It - - it means that from front to back, it's, like, it feels like
something stick - - it's sticking me in the throat all the time.  I
don't know how else to say it.

        . . . .

Q       Gotcha.  And that has been present since the surgery?

A       Yes.

. . . .

Q       Okay.  And then, the next time, so this all started immediately
after surgery, is that - - is that right?

A       Yeah, I mean, definitely I felt different after the surgery than I
ever felt before in my life.
. . . .

Q       . . . And I guess what I'm asking is . . . did you personally go, "I
wonder if this is because of the surgery"? That's what I'm asking.

A       Again, I was just confused.  I mean, at first yeah, absolutely.
Yeah, I guess I would say yeah.  Yeah, yes.

Q       Gotcha.

A       Because I felt . . . totally different after the surgery than I ever
felt before.  So, why wouldn't it be from the surgery?  . . . I guess

that's why I kept seeking and, you know, trying to find out what the heck is wrong, or whatever, you know.

Dr. Munshi asserts that "[a] reasonable person who 'felt different after surgery than I ever felt before in my life' would be in a position to call for an inquiry." Dr. Munshi also asserts that on October 24, 2019, he referred Mrs. Broussard to Dr. Trawick "specifically for the purpose of investigating a complaint that she had related to dysphagia and feeling something poking her throat." According to Dr. Munshi, October 24, 2019, is the date on which "Mrs. Broussard had sufficient information to excite the curiosity of a reasonable person" such that her complaint filed on September 8, 2021, was well beyond the one-year prescriptive period.

Dr. Munshi further argues that since he did not treat Mrs. Broussard after October 24, 2019, the third category of contra non valentem does not apply because there was no continuing treatment and because there was no evidence that Dr. Munshi concealed, misrepresented, or fraudulently misled Mrs. Broussard. In fact, Dr. Munshi cites the following testimony elicited from Mrs. Broussard at the hearing on the exceptions of prescription:

Q    Ma'am, Dr. Munshi never prevented you from obtaining your medical records, correct?

A    No.

Q    And you'd agree that Dr. Munshi would listen to your complaints, right?

A    Yes.

Q    And he would investigate those. That's why he ordered the x-rays and the MRIs, right?

A    Yes.

Q    And that's actually why he sent you over to Dr. Trawick, right?

A    Right.

10

Q       Because you reported you were having some swallowing
        problems, poking in the neck?

A       Yes.

Q       And so Dr. Munshi specifically sent you to that doctor, that
        specialist for those issues?

A       Yes.

Dr. Trawick alleged that Mrs. Broussard "had actual and/or constructive notice of the alleged negligent acts of Dr. Trawick which caused the commencement of the prescriptive period . . . on November 11, 2019[,] or at the latest July 6, 2020." Dr. Trawick pointed out that the medical records sent to him from Dr. Griffith contained a radiology report dated October 23, 2019, from an upper GI fluoroscopy ordered by Dr. Griffith, which indicated that Mrs. Broussard stated that "hardware pushing on esophagus shown on MRI."[2]  When questioned about this at the hearing on the exceptions, Mrs. Broussard stated that the radiologist might have "assumed" this information because she "cannot see inside my body[,] and no one had ever told me that."

Dr. Trawick also pointed out that during a telehealth visit on July 6, 2020, his family nurse practitioner, Susan Miedecke, noted that Mrs. Broussard stated that she had a plate put in her neck on August 12, 2019, and that "she feels this is what causes her to have dysphagia."  Dr. Trawick points out several times in brief that he was not in possession of any radiological study or report actually showing that the surgical hardware was pushing on Mrs. Broussard's esophagus.  He also points to Mrs. Broussard's testimony that she did not know whether Dr. Trawick had a copy of any X-ray films or reports.  Dr. Trawick asserts that the medical records show that

_____

[2] The radiologist who signed this report is Dr. Jerome Gallien.

11

Mrs. Broussard had knowledge of the hardware issue and demonstrated that knowledge on more than one occasion.

Thus, we find that the medical records and Mrs. Broussard's own testimony establish that she had constructive notice of her malpractice claim prior to the alleged date of discovery, November 16, 2020. We note that the records of Dr. Griffith, who is Mrs. Broussard's primary physician and who is not a defendant in these proceedings, contain reports documenting that Mrs. Broussard told healthcare providers as early as October 23, 2019, that she thought the hardware from the surgery performed by Dr. Munshi was "pushing" on her esophagus. Despite Mrs. Broussard's testimony that she has no control over what is put into the medical records, there are multiple notations in the charts of multiple physicians indicating that Mrs. Broussard related her complaints to the hardware placed during the surgery performed by Dr. Munshi and that these complaints started almost immediately after the surgery. Mrs. Broussard's own testimony, as quoted above, establishes that neither Dr. Munshi nor Dr. Trawick intentionally concealed information from her or misrepresented anything to her.

For these reasons, we find that the trial court was not manifestly erroneous in finding that Mrs. Broussard had constructive notice of her claim prior to September of 2020, or in its finding that the doctrine of contra non valentem is inapplicable to this case.

We next address the Broussards' contention that the trial court erred in not applying the "uncalled witness" rule set forth in *Driscoll*, 893 So.2d 32, and its corresponding adverse presumption. *Driscoll*, 893 So.2d at 47 explains:

> An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party need

only put on enough evidence to prove the case. *Safety Ass'n of Timbermen Self Insurers Fund v. Malone Lumber, Inc.*, 34,646 (La.App. 2 Cir. 6/20/01), 793 So.2d 218, *writ denied,* 2001-2557 (La. 12/07/01), 803 So.2d 973. Explaining that adverse presumption, the Fourth Circuit recently noted " '[w]hen a defendant in a civil case can by his own testimony throw light upon matters at issue, necessary to his defense and particularly within his own knowledge, and fails to go upon the witness stand, the presumption is raised and will be given effect, that the facts, as he would have them do not exist.' " *Taylor v. Entergy Corp.*, 2001-0805[, p. 14] (La.App. 4 Cir. 4/17/02), 816 So.2d 933[, 941] (quoting *Davis v. Myers*, 427 So.2d 648, 649 (La.App. 5 Cir. 1983)). This adverse presumption is referred to as the "uncalled witness" rule and applies "when 'a party has the power to produce witnesses whose testimony would elucidate the transaction or occurrence' and fails to call such witnesses." *Id.* (quoting 19 FRANK L. MARAIST, LOUISIANA CIVIL LAW TREATISE: EVIDENCE AND PROOF, § 4.3 (1999)). Despite the advent of modern, liberal discovery rules, this rule remains vital, especially in cases, such as this one, in which a witness with peculiar knowledge of the material facts is not called to testify at trial.

The application of this adverse presumption is "fully within the discretion of the trial court." *Glasscock v. Bd. of Supervisors of La. State Univ.*, 49,855, p. 4 (La.App. 2 Cir. 8/19/15), 174 So.3d 757, 761, *writ denied*, 15-1628 (La. 10/30/15), 179 So.3d 618. There is no abuse of discretion in the trial court's refusal to apply the adverse presumption "where the witness's testimony would be cumulative; where the party seeking to avail itself of the negative inference has the burden of proof on the issue that would be addressed by the witness's testimony; and where the witness is equally available to the opposing party." *Moretco, Inc. v. Plaquemines Par. Council*, 12-430, p. 18 (La.App. 4 Cir. 3/6/13), 112 So.3d 287, 296-297 (footnotes omitted), *writ denied*, 13-724 (La. 5/17/13), 118 So.3d 376.

Dr. Trawick argues that the Broussards fail to show what additional material facts Dr. Trawick had regarding the discovery of potential malpractice claims outside of what was plainly documented in the medical records.

Dr. Munshi asserts that the Broussards did not request the application of the adverse presumption at the trial court. "As a general rule, appellate courts will not consider issues raised for the first time in this court, which are not pleaded in the court below and which the district [court] has not addressed." *Geiger v. State ex rel. Dep't of Health & Hosp.*, 01-2206, p. 11 (La. 4/12/02), 815 So.2d 80, 86. However, this court may address an issue not considered by the trial court when "the interest of justice requires otherwise." Uniform Rules — Courts of Appeal, Rule 1–3.

"Ordinarily, the burden of proof is on the party pleading prescription[.]" *Adams v. Ochsner Clinic of Baton Rouge*, 99-2502, p. 3 (La.App. 1 Cir. 11/3/00), 771 So.2d 258, 260, *writ denied*, 00-3159 (La. 1/12/01), 781 So.2d 558. "However, when, as in the instant case, the plaintiff is met with an exception of prescription filed in the district court during the pending medical panel review under the Medical Malpractice Act, the plaintiff is required to prove the defense of contra non valentem as allowed under La.R.S. 9:5628." *Verbois v. Taylor*, 15-240, p. 6 (La.App. 1 Cir. 12/17/15), 185 So.3d 59, 62, *writ denied*, 16-37 (La. 3/4/16), 188 So.3d 1062.

> [I]n response to the filing of a peremptory exception of prescription during the medical review panel process, where the request for a medical review panel was filed more than a year after the date of the alleged malpractice, [the claimant] had the burden of submitting evidence of her late discovery of facts that put her on notice of possible malpractice.

*In re Skipper*, 17-724, p. 6 (La.App. 1 Cir. 12/21/17) (unreported decision).

The Broussards assert that the "uncalled witness" rule is a critical issue not addressed by the trial court where Mrs. Broussard testified live at the hearing but neither Dr. Munshi nor Dr. Trawick testified on their own behalf. The Broussards are attempting to invoke the "uncalled witness" rule because they are in need of the adverse presumption to establish that Dr. Munshi and Dr. Trawick concealed

critically important medical information from them so that contra non valentem will apply. This theory is not supported by either the jurisprudence or the evidence submitted at the hearing on the exceptions of prescription. As previously discussed, we found no error in the trial court's findings that there were multiple occasions prior to September of 2020, where Mrs. Broussard displayed constructive notice of her claim. Because the Broussards bear the burden of proof on the defense of contra non valentem, we find that they may not avail themselves of the negative inference provided by the "uncalled witness" rule and its corresponding adverse presumption in this case. *See Moretco*, 112 So.3d 287. Therefore, we find no abuse of discretion in the trial court's failure to apply the uncalled witness rule.

V.

## CONCLUSION

For the foregoing reasons, we affirm the granting of the exceptions of prescription filed on behalf of Dr. Ilyas Munshi and Dr. Eric Powell Trawick and the dismissal, with prejudice, of the claims brought by Dana Broussard and Byron Broussard. All costs of this appeal are assessed against the Broussards.

**AFFIRMED.**

15